UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EAST END ERUV ASSOCIATION, INC.,
DEBORAH POLLACK, SIMCHA POLLACK,

                                    Plaintiffs,                          **MEMORANDUM
                                                                                  AND ORDER**

                     - against -

                                                                                  CV 13-4810 (AKT)

THE TOWN OF SOUTHAMPTON, THE TOWN
OF SOUTHAMPTON ZONING BOARD OF
APPEALS,

                                    Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       The Jewish People for the Betterment of Westhampton Beach a/k/a Jewish People Opposed to the Eruv ("JPOE") previously filed a motion to intervene in this action. *See* JPOE Mot. [DE 11]. Plaintiffs East End Eruv Association ("EEEA"), Deborah Pollack, and Simcha Pollack (collectively, "Plaintiffs") opposed the motion. *See* DE 13. Defendants have not interposed any response to the instant motion. At the January 7, 2014 Status Conference, the Court DENIED the motion to intervene from the bench and stated that a written decision would be issued amplifying the reasons for doing so. This Memorandum sets forth those reasons

**I.    BACKGROUND**

       This litigation involves the question of whether "lechis" may be attached to utility poles to create an "eruv." An eruv, under Jewish law, is a largely invisible unbroken demarcation of an area. *See* Compl. [DE 1] ¶ 26. An eruv boundary is created by, among other things, using strips of wood or plastic, or lechis, attached to the sides of certain existing telephone or utility poles. *Id.* The designation of an eruv allows Jews with certain religious

beliefs to carry or push objects from place to place within the boundary on the Sabbath and Yom Kippur. *Id.* ¶ 30.

Plaintiffs filed their Complaint in this action (the "EEEA II Action") on August 27, 2013. *See generally* Compl. Plaintiffs had previously filed a similar Complaint against the Town of Southampton, the Village of Westhampton Beach, and the Village of Quogue (collectively, the "Municipal Defendants") in *East End Eruv, et al. v. Village of Westhampton Beach, et al.*, CV 11-213 (the "EEEA I Action"). On February 4, 2013, Judge Wexler dismissed that action against the Town of Southampton, with leave to renew, following certain applications to be made to Southampton. *See* EEEA I Action Feb. 4, 2013 Hr'g Tr. 9:19-24. The present action constitutes Plaintiffs' renewed application pursuant to Judge Wexler's directives.[1]

Plaintiffs maintain that the instant action was commenced in response to efforts by Defendant Town of Southampton (the "Town") to threaten and pressure Verizon New York, Inc. ("Verizon") and Long Island Lighting Co., d/b/a Long Island Power Authority ("LIPA") to renege on licensing agreements they entered into with Plaintiff EEEA in 2010, which require Verizon and LIPA to issue licenses to EEEA for the attachment of lechis to utility poles for the establishment of an eruv. *See* Pls.' Mem. of Law in Opp. to Mot. to Intervene ("Pls.' Opp.") [DE 13] at 5. The Town has declared that the lechis are signs and are therefore prohibited under local zoning regulations; the Town has also denied Plaintiffs' request for a variance for the lechis. *See* Compl. ¶ 145. Plaintiffs allege that Defendant Town of Southampton Zoning Board of Appeals (the "Zoning Board of Appeals") wrongfully denied Plaintiffs' appeal from the Town's rulings. *Id.* Plaintiffs request a declaration that (1) there is no basis for the Town's determination that local laws prohibit affixing lechis to utility poles or that municipal approval is

---

[1] The EEEA I Action is still pending before this Court.

required for such action; and (2) the private third parties should therefore be free and clear to implement the contracts to permit such action. Compl. ¶ 16. Plaintiffs also seek an order permanently enjoining the Town from taking actions that would prevent the Plaintiffs from establishing and maintaining the eruv, as well as an order compelling the Zoning Board of Appeals to issue any necessary approvals and permits to allow Plaintiffs to construct the eruv. *Id.*

Verizon and LIPA have also interposed a Complaint against the Town and other municipal defendants seeking declaratory and injunctive relief. *See Verizon et al. v. Village of Westhampton Beach, et al.*, CV 11-252 (the "Verizon Action"). Verizon and LIPA contend that they (1) own the utility poles at issue; (2) are willing to allow the installation of the lechis to establish the eruv; and (3) entered into an agreement with EEEA to permit it to install lechis on the utility poles. Verizon Action Compl. ¶ 2. However, according to Verizon and LIPA, the municipalities have prohibited the attachment of the lechis, asserting that the attachment is either (i) not permitted; or (ii) requires prior approval pursuant to local laws which regulate the display of "signs" or that restrict intrusions on public rights of way. *Id.* ¶ 2. Verizon and LIPA sought a declaration that they may allow the installation of lechis on their utility poles without incurring any fines or other legal sanctions, and without any liability to the municipalities.[2] *Id.* ¶ 4.

JPOE filed motions to intervene in the EEEA I Action and the Verizon Action, however, Judge Wexler denied both of these motions. *See* Verizon Action, EEEA I Action, Electronic Order, Feb. 4, 2013; Verizon Action DE 96; EEEA I Action DE 196. JPOE appealed Judge

---

[2]   On June 16, 2014, this Court issued its "Findings of Fact and Conclusions of Law" holding, among other things, that (1) Verizon and labor are authorized to enter into private agreements to attach items to their utility poles and(2) with regard to the Village of Westhampton Beach, there is no regulation prohibiting the establishment of the eruv or the attachment of lechis to utility poles.

Wexler's rulings to the Second Circuit. Verizon Action DE 101; EEEA I Action DE 203. On March 3, 2014, the Second Circuit affirmed Judge Wexler's rulings, noting among other things that JPOE had failed to show why the municipal defendants did not adequately represent any interest JPOE may have in the case. *See* Mandate of the United States Court of Appeals for the Second Circuit [DE 249].

On July 30, 2012, JPOE and two individual plaintiffs filed a separate lawsuit against EEEA, the Village of Westhampton Beach, Verizon, and LIPA (the "JPOE Action"). JPOE Action [DE 1]. Plaintiffs in the JPOE Action claim that the establishment of an eruv within the Village of Westhampton Beach would constitute a violation of the Establishment Clause. *Id.* JPOE's claims against Verizon, LIPA and EEEA were subsequently dismissed by Judge Wexler. *See* JPOE Action, Electronic Order, Feb. 4, 2013; DE 28. The JPOE Plaintiffs filed A Notice of Appeal on April 25, 2014. *Id.*, DE 34. That appeal is still pending . JPOE's claims against the Village of Westhampton Beach remain and the case is now assigned for all purposes to United States Magistrate Judge Arlene Lindsay, although the proceedings are stayed pending the outcome of the appeal.

The parties in the Verizon Action, the EEEA I Action, and the EEEA II Action previously filed consents to the jurisdiction of a United States Magistrate Judge for all purposes. *See* Verizon Action DE 98; EEEA I Action DE 200; EEEA II Action DE 7. The pending matters were then transferred to this Court. *See* Verizon Action DE 100; EEEA I Action DE 202; EEEA II Action DE 15.

On October 11, 2013, JPOE filed the motion to intervene in the instant matter. *See* JPOE Mot. [DE 11]. Plaintiffs opposed the motion. *See* DE 13. Defendants did not interpose any response to the motion.

4

## II. LEGAL STANDARD

With regard to intervention as of right, Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that

> [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*See* Fed. R. Civ. P. 24(a)(2). To intervene as of right pursuant to Rule 24(a)(2), a movant must show that (1) the application is timely; (2) the applicant claims an interest relating to the subject matter of the action; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party. *See R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001); *St. John's Univ., N.Y. v. Bolton*, 450 Fed. App'x 81, 83 (2d Cir. 2011).

With respect to permissive intervention, under Rule 24(b), a court may "[o]n a timely motion . . . permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact," but the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3); *see MASTR Adjustable Rate Morgages Trust 2006-A3 v. UBS Real Estate Securities*, No. 12 Civ. 7332, 2013 WL 139636, at *2 (S.D.N.Y. Jan. 11, 2013). "In exercising its broad discretion under Rule 24(b), a court considers the same factors that it considers for intervention as of right." *See MASTR Adjustable*, 2013 WL 139636, at *2; *see also Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013) ("Courts typically consider the same four factors whether a motion for intervention is 'of right' under Fed. R. Civ. P. 24(a) or

5

'permissive' under Fed. R. Civ. P. 24(b).") (citing *R Best Produce*, 467 F.3d at 240 and *Hnot v. Willis Group Holdings, Ltd.*, 234 Fed. App'x 13, 14 (2d Cir. 2007)).

## III. DISCUSSION

With the foregoing principles in mind, the Court analyzes JPOE's motion to intervene.

### A. Timeliness

As an initial matter, the Court finds that the motion here is timely. Whether a motion to intervene is timely is "within the sound discretion of the trial court from all the circumstances." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994); *Republic of Philippines v. Christie's*, No. 98 Civ. 3871, 2000 WL 1056300, at *2 (S.D.N.Y. Aug. 1, 2000). The motion to intervene was made approximately two months after the Complaint was filed, before any discovery was conducted in this matter. The Court thus finds that JPOE's application is timely. *Pitney Bowes, Inc.*, 25 F.3d at 70; *Republic of Philippines*, 2000 WL 1056300, at *2.

### B. Whether JPOE has an Interest in the Action, and Whether that Interest Will be Impaired by the Disposition of the Action

The more difficult question is whether or not JPOE has an interest in this action, and, if so, whether such interest would be impaired by the disposition of this action. It is JPOE's position that an eruv is inherently, "by tradition and design, a religious symbol that conveys a religious meaning based upon a particular interpretation of Jewish law that is affirmatively rejected as a valid and legitimate interpretation of Jewish religion by members of JPOE . . ." JPOE Mem. of Law in Support of Mot. to Intervene ("JPOE Mem.") [DE 11-1] at 7. JPOE argues that it has an interest in this action because JPOE is "adamantly opposed to the very thing plaintiffs seek to achieve — the permission and facilitation by the Town Defendants in the construction of the eruv . . ." *Id.* at 10. JPOE asserts that its interest is grounded in the Establishment Clause of the First Amendment, and JPOE's members "strenuously object to

6

having their own governmental bodies openly take sides with and endorse religious views which they do not share and, in many cases, affirmatively oppose and reject." *Id.* at 9-10. JPOE argues that the Second Circuit has recognized a "spiritual First Amendment injury," and that JPOE will suffer such injury if its members are "compelled to live within the geographic bounds of an area visibly circumscribed and defined by the permanent erection and display of a sectarian religious symbol . . . on governmental property . . ." JPOE Mem. at 4 (citing *Sullivan v. Syracuse Housing Authority*, 962 F.2d 1101 (2d Cir. 1992) (noting possibility of "spiritual First Amendment injury" and conferring standing on plaintiff who was deprived of the use and enjoyment of the public housing facilities in which he resided because the housing authority's community center housed a Christian "Rescue Mission"); JPOE Reply Mem. in Supp. of Mot. to Intervene ("JPOE Reply Mem.") [DE 16] at 3-4 (citing *Cooper v. United States Postal Service*, 577 F.3d 479, 491 (2d Cir. 2006) (conferring standing on plaintiff who was "made uncomfortable by direct contact with religious displays that were made a part of his experience using the postal facility nearest his home, and that upon complaint, he was advised to alter his behavior"). Further, JPOE maintains that courts have previously recognized the standing of plaintiffs "to oppose the creation and maintenance of an eruv." JPOE Mem. at 11 (citing *ACLU of New Jersey v. City of Long Beach*, 670 F. Supp. 1293 (D.N.J. 1987) (recognizing standing of plaintiffs to challenge aesthetic and environmental impact of creation of eruv)).[3]

---

[3] In support of its motion, JPOE has introduced certain academic writings of Professor Charlotte Fonrobert discussing the function and significance of the eruv during the early rabbinic period. *See* Charlotte E. Fonrobert, "Neighborhood as Ritual Space: The Case of the Rabbinic Eruv, attached as Ex. C to the Decl. of Arnold Sheiffer (the "Sheiffer Decl.") [DE 11-2]. After the motion was fully briefed, Plaintiffs introduced a declaration from Professor Fonrobert (the "Fonrobert Decl.") apparently refuting JPOE's interpretation of her works, and requesting that her "name and scholarship not be associated with JPOE's efforts to stymie the EEEA's efforts to freely exercise their religious beliefs." *See* Pls.' Letter of Nov. 15, 2013; *see generally* Fonrobert Decl., attached as Ex. 1 to Pls.' Letter of Nov. 15, 2013. The Court finds that an analysis of

Plaintiffs argue that under Rule 22(a)(2), a party must have an interest in the controversy that is "direct, substantial, and legally protectable." Pls.' Opp. at 9 (quoting *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992) (citations and internal quotation marks omitted)). Plaintiffs maintain that the only interest JPOE has articulated is a general desire not to live in a community with an eruv, which implies that JPOE "simply does not want Sabbath-observant Jews in their community." Pls.' Opp. at 10. Further, Plaintiffs contend that (1) the Establishment Clause is not implicated by the creation of the eruv because under the circumstances here, the establishment of the eruv would not involve government action; and (2) even assuming government activity, such activity does not violate the Establishment Clause. Pls.' Opp. at 11-12.[4] Finally, Plaintiffs argue that JPOE has no standing in this case because (i)

---

Professor Fonrobert's scholarship — and her objections to JPOE's use of that scholarship — is not necessary to resolve this motion.

[4] Plaintiffs discuss several cases holding that governmental action in connection with the creation of an eruv is a valid accommodation of religious practice under the Free Exercise Clause rather than a violation of the Establishment Clause. *See* EEEA Opp. at 16 (citing *Tenafly Eruv Ass'n v. Borough of Tenafly,* 309 F.3d 144, 176 (3rd Cir. 2002) (where borough council ordered removal of lechis attached to utility poles and resident plaintiffs moved for a preliminary injunction, court held, *inter alia*, that (i) residents failed to establish that affixing lechis to utility poles to create eruv was expressive conduct entitled to First Amendment protection; (ii) borough's selective, discretionary application of ordinance barring private citizens from affixing signs and other items to utility poles triggered strict scrutiny of the claim that the order requiring removal of lechis violated Free Exercise Clause of First Amendment; (iii) residents were reasonably likely to prevail on merits of Free Exercise claim; and (iv) residents were entitled to preliminary injunctive relief barring removal of lechis); *ACLU of N.J. v. City of Long Branch*, 670 F. Supp. 1293, 1295 (D.N.J. 1987) (finding city's authorization of Jewish organization to construct eruv on public property did not violate establishment clause, noting that "[c]ertain accommodations by the state will always be necessary in order to insure that people of all religions are accorded the rights given them by the free exercise clause of the first amendment" and finding that the city's actions "merely accommodate[ ] the religious practices of those residents who are observant Jews"); and *Smith v. Cmty Br. No. 14*, 128 N.Y.S. 2d 944, 946-948 (Sup. Ct. Queens Cnty. 1985), *aff'd*, 133 A.D.2d 79 (2d Dep't 1987) (holding that community board, by permitting Jewish organization to construct an eruv on public land, did not violate the Establishment Clause of the First Amendment, but instead provided "a valid accommodation to religious practice" under the Establishment Clause). JPOE contends that the merits of its Establishment Clause claim are not properly before the Court on this motion, and that Plaintiffs'

it has never disclosed the identity of a single JPOE member who resides within the Town of Southampton; and (ii) merely establishing that the Constitution has been violated or alleging psychological offense is not sufficient to confer standing. Pls.' Opp. at 13-14 (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 485 (1982); *Freedom from Religion Found., Inc. v. Obama*, 641 F.3d 803, 807-808 (7th Cir. 2011)). Plaintiffs conclude that the only purported injury that JPOE has invoked – besides its generalized interest in preventing the government from allegedly violating the Constitution – is psychological harm that its members may experience upon seeing lechis attached to utility poles, which, according to Plaintiffs, is not sufficient to confer standing on JPOE. Pls.' Opp. at 14.

The Court has reviewed the parties' arguments, and finds that, even *assuming* (1) an interest sufficiently particularized to impart standing on JPOE; and (2) that such interest would be impaired by the disposition of the action, the instant motion must still fail, because JPOE has not sufficiently shown that its interests are not adequately protected by the Defendants.

### C. JPOE has not Sufficiently Shown that its Interest is not Adequately Protected by the Defendants

Intervention as of right is only available to movants with interests that are not already adequately protected by an existing party. *St. John's*, 450 Fed. App'x at 84 (where proposed intervenor shared the same objective in the underlying litigation, a "presumption of adequate representation" attaches) (citing *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179

---

arguments addressing the merits should be disregarded. JPOE Reply Mem. at 12. In the event the Court considers the merits, JPOE argues it has made a successful Establishment Clause claim under the three-part test set forth in *Lemon v. Kurtzman*, 403 U.S. 612 (1971). *See* JPOE Reply Mem. at 10 (citing *Lemon*, 403 U.S. 612) (holding that in order to sustain a governmental action or policy under the Establishment Clause, the court must find that (i) the governmental action serves a secular purpose; (ii) the principal or primary effect of the government action may not be to either advance or inhibit religion; and (iii) the government action may not foster excessive governmental entanglement with religion)).

(2d Cir. 2001)); *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured.") (citing *Ionian Shipping Co. v. British Law Ins. Co*., 426 F.2d 186, 190 (2d Cir. 1970)). Moreover, while the burden to demonstrate inadequacy of representation is generally "minimal," the Second Circuit has demanded a "more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *U.S. v. N.Y. State Bd. of Elections*, 312 Fed. App'x 353, 355 (2d Cir. 2008); *Butler*, 250 F.3d at 179 (citing *Wash. Elec.*, 922 F.2d at 98); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (proposed intervenor "must at least overcome the presumption of adequate representation that arises when it has the same ultimate objective as a party to the existing suit."); *accord Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 178 F.R.D. 39, 42 (E.D.N.Y. 1998) ("[A]dequate representation is presumed when the would-be intervenor shares the same ultimate objective as a party to the lawsuit."). Similarly, "a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action." *Wash. Elec.* 922 F.2d at 98 (citing *Natural Res. Defense Council v. N.Y. State Dep't of Environ. Conservation*, 834 F.2d 60, 62 (2d Cir. 1987)); *Gulino v. Board of Educ.*, No. 96 CV 08414, 2009 WL 2972997, at *4 (S.D.N.Y. Sept. 17, 2013) ("An existing party's representation is not inadequate . . . merely because its motive to litigate is different from that of the potential intervenor.") (internal citations and quotations omitted); *Schaghticoke Tribal Nation v. Norton*, No. 3:06cv81, 2006 WL 1752384, at *7 (D. Conn. June 14, 2006) ("The Second Circuit has held that differing motives to litigate, in the absence of a disagreement over the desired result, is not sufficient to justify intervention as of right.") (citing *Wash Elec. Coop*, 922 F.2d at 98).

In general, in order to rebut the presumption of adequate representation that is assumed where the parties share the same ultimate objective, a proposed intervenor must show, for example, "evidence of collusion, adversity of interest, nonfeasance, or incompetence." *St. John's*, 450 Fed. App'x at 84 (presumption of adequate representation attaches absent evidence of collusion, adversity of interest, nonfeasance or incompetence); *Butler,* 250 F.3d at 179 ("Although perhaps not an exhaustive list, we generally agree with the holdings of other courts that evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy.") (citing *United States v. Int'l Bus. Machs. Corp.*, 62 F.R.D. 530, 538 (S.D.N.Y. 1974)).

JPOE argues that the Defendants do not adequately protect its interests because the existing Defendants are the Town and the Zoning Board of Appeals, which "necessarily have an altogether different perspective and have altogether separate interests." JPOE Mem. at 13. Specifically, the Defendants cannot claim any spiritual injury, JPOE maintains, since they "are required to remain strictly neutral and are not in a position to advance the Establishment Clause opposition." *Id*. Plaintiffs assert that JPOE's interests are adequately protected by the Defendants because they all share the same ultimate objective – to prevent the establishment of the eruv. Pls.' Mem. at 18-19. That Defendants may have a different motivation from JPOE in opposing Plaintiffs' suit, or that Defendants may not be in a position to advocate a particular viewpoint with respect to the eruv itself, is of no consequence, Plaintiffs argue, based on the relevant case law. *Id.* at 19-20.

The Court finds that JPOE has not sufficiently shown that its interests are not adequately protected by the Defendants here. JPOE and Defendants all share the same ultimate objective – to prevent the establishment of Plaintiffs' proposed eruv. The Town of Southampton has

previously articulated arguments grounded in the Establishment Clause in the EEEA I Action. *See, e.g.,* Mem. of Law in Opp. to Mot. for Preliminary Injunction on Behalf of Defs. EEEA Action [DE 49-4] at 13 ("The grant of the preliminary injunction would necessarily and inextricably result in a violation of the Establishment Clause."). Moreover, Defendants here have already expressed their desire to move to dismiss the action, which serves the same objective as JPOE, namely, prevention of the establishment of the eruv. *See* Defs.' Letter Mot. for Pre-Mot. Conference [DE 14] ("The Town's motion to dismiss will make the necessary "strong showing" that, based upon the facts and circumstances of this case, that Plaintiff[s'] claims . . . lack merit). Specifically, if the Complaint is dismissed, Plaintiffs would not receive (1) an order permanently enjoining the Town from taking actions that would prevent the Plaintiffs from establishing and maintaining the eruv; or (2) an order compelling the Zoning Board of Appeals to issue any necessary approvals and permits to allow Plaintiffs to construct the Eruv. *Id.* Thus, the status quo would be maintained, *i.e.*, the Zoning Board of Appeals' affirmation of the Town's decision to prevent the establishment of the eruv would stand.

That JPOE may share a different motive from Defendants here in opposing Plaintiffs' action does not rebut the presumption of adequate representation. *See Wash. Elec.* 922 F.2d at 98 ("[Plaintiff] and [putative intervenor] may have differing motives for recovering the money paid to [defendant]; the former wants the money back for itself, while the later wants to assure that money due consumers is returned to them. However, a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action."); *Gulino*, 2009 WL 2972997, at *3-*4 (denying motion to intervene where proposed intervenors did not rebut presumption that their interests were adequately protected, since both intervenors and defendant had the same 'ultimate objective' in the litigation, *i.e.*, a ruling in

12

favor of defendant); *Schaghticoke*, 2006 WL 1752384, at *7 (denying motion to intervene because although proposed intervenors had a "strong interest" in the outcome of the action, distinct from defendant's interest, intervenors and defendant sought the same result); *Citizens Against Casino Gambling in Erie County v. Hogen*, 704 F. Supp. 2d 269, 286 (W.D.N.Y. 2010) (denying Native American group's motion to intervene to protect its interests in territorial sovereignty and economic development because government's interest in defending its regulations and determinations ultimately lead to the same objective, *i.e.*, upholding government determination that permitted gambling on Native American territory); *Great Atlantic & Pacific Tea Co.*, 178 F.R.D. at 42 (denying environmental group's motion to intervene in action against the Town of East Hampton because, even where the environmental group was motivated by a concern to protect the environment and the Town of East Hampton's concern was focused on economic growth and stimulation of tax revenues, these interests coincided in the single legal issue to be determined by the lawsuit); *Miller v. Silberman*, 832 F. Supp. 663, 672 (S.D.N.Y. 1993) (denying tenants' motion to intervene where tenants argued that the housing court acts as a neutral party and could not adequately represent tenants' concerns, because, even where the interests of housing court and tenant were hostile at times, both sought dismissal of the complaint, or at a minimum, preservation of the status quo).

As noted, where a proposed intervenor shares the same objective in the underlying litigation, a "presumption of adequate representation" attaches. *St. John's*, 450 Fed. App'x at 84; *Butler*, 250 F.3d at 179. JPOE has not made the "rigorous showing" that Defendants' representation is inadequate, which is required here in light of the fact that JPOE and Defendants share the same objective. *N.Y. State Bd. of Elections*, 312 Fed. App'x at 355; *see Wash. Elec.*, 922 F.2d at 98; *Brennan*, 579 F.2d at 191. Neither has JPOE shown or apparently even alleged

13

"collusion, adversity of interest, nonfeasance, or incompetence." *St. John's*, 450 Fed. App'x at 84; *Butler,* 250 F.3d at 179 *Int'l Bus. Machs.*, 62 F.R.D. at 538.

Based on the foregoing analysis, even assuming JPOE has an interest in this action, the Court finds that JPOE has not sufficiently shown that its interests are not adequately protected by the Defendants.

## IV. CONCLUSION

For the foregoing reasons, JPOE's motion to intervene in this action is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
September 23, 2014

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge